IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LAWRENCE DUPREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 3:10cv970-WKW |
| | ) | (WO) |
| CITY OF PHENIX CITY, ALABAMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE and ORDER**

In this 42 U.S.C. § 1983 action, the pro se plaintiff, Danny Lawrence Dupree ("Dupree"), complains that defendants Phenix City Police officer Sherry Lashley ("Lashley") and the City of Phenix City violated his constitutional rights by unlawfully arresting him, and improperly seizing his shotgun. The plaintiff filed two amended complaints setting forth his allegations in more detail. In his second amended complaint, Dupree specifically complains that defendant Lashley arrested him without a warrant in violation of the Fourth Amendment to the United States Constitution, and defendant City of Phenix City has a practice and custom of permitting improper arrests. *See* Doc. # 31. The court has jurisdiction of the 42 U.S.C. § 1983 claim pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.

This case is now pending before the court on the defendants' motion for summary judgment (doc. # 72) filed on April 30, 2012. The plaintiff has filed a response in opposition to the defendants' motion. After careful consideration and review, the court concludes that

the motion for summary judgment is due to be granted in part and denied in part.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a

---

[1]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must be support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

       For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

4

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  With these principles of law in mind, the court will determine now whether summary judgment is

appropriate and should be granted.

### III.  FACTS[2]

On November 13, 2008, defendant Sherry Lashley was employed as a patrol officer by the City of Phenix City Police Department.  (Doc. # 72, Ex. B, Aff. Lashley at 1).  At approximately 6:30 a.m. on that day, Lashley was dispatched to North Railroad Street and 6th Avenue in response to a report of a "male subject near a dark truck displaying an unknown type weapon."  (Doc. # 72, Ex. A, at 3).

When she arrived, Lashley encountered Dupree.  When Dupree saw Lashley's patrol car, he grabbed grocery bags and began to exit his truck.  (Doc. # 82, Aff. Dupree at 3).  What happened next is hotly disputed.  According to Dupree, Lashley instructed him to put his groceries back in his truck which he did.  (*Id*.)  She then instructed him to turn around, and he complied.  He tried to explain that his truck was stuck but Lashley "had no interest in what [he] wanted to say."  (*Id*.)  Lashley then requested permission to search Dupree's truck which he refused.  Dupree asserts that he "complied in every way with said officer's instruction."  (*Id*.)  He did not raise his voice, curse, yell, use racial epithets, use obscene language or disobey any orders by the officer.  (*Id*. at 3-4).  Dupree also asserts that at no

---

[2]  At this stage of the proceedings, this court takes the facts alleged by Dupree as true and construes them in the light most favorable to him.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations....").
The court makes no factual findings, and the actual facts may be different than those stated here.

time did he remove his shotgun from his truck. (*Id*. at 4). He contends that he was "polite, cooperative, [and] not argumentative," but he did not give officer Lashley permission to search his truck. (*Id*.) Finally, Dupree contends that he made no statement at any time to Lashley about the shotgun in his truck. (*Id*.)

Lashley describes a completely different scene. According to Lashley's affidavit,[3] Dupree was standing outside the truck when she arrived. (Doc. # 72, Ex. B, at 1). Very quickly a witness told Lashley that Dupree had pointed a shotgun at him earlier. (*Id*.). Lashley approached Dupree who "appeared agitated in [her] presence." (*Id*. at 2). Lashley then noticed the shotgun on the front seat of Dupree's truck. (*Id*.) Dupree denied having any weapons. (*Id*). Lashley asserts that during the duration of her encounter with Dupree, he was yelling answers, screaming, cursing, and refusing to "lower his voice and calm down after being instructed to do so." (*Id*.) At some point, Lashley spoke with a couple who advised her that Dupree had been yelling racial epithets while standing in the street with a shotgun in his hand. (*Id*.) Lashley arrested Dupree for disorderly conduct, and seized his Mossberg 12 gauge shotgun.

On November 14, 2008, a criminal complaint was filed charging Dupree with disorderly conduct. (Doc. # 72, Ex. F). At a court hearing on January 6, 2009, the charge was nolle prossed on the motion to the prosecutor because the criminal complaint named a

---

[3] The defendants filed Lashley's police report narrative created on November 14, 2008 as well as her affidavit, signed on April 25, 2012. Although there are inconsistencies between Lashley's narrative and her affidavit, regardless of which document the court considers, her chronicles of the encounter with Dupree varies vastly from Dupree's description of the event.

"Mr. Price," instead of Danny Dupree.  (Doc. # 72, Ex. E & I).

Despite numerous requests, Dupree was unable to secure the return of his shotgun. This lawsuit followed.  Shortly after the complaint was filed in this case, the shotgun was returned to Dupree's friend, Thomas Worthy.

## III.  DISCUSSION

### A.  Motions to Strike

Before addressing the defendants' motion for summary judgment, as an initial matter, the court disposes of the parties' motions to strike (docs. # 80, 81, & 83).  The plaintiff and the defendants seek to strike certain information relied on by the opposing party either in support of or in opposition to the pending motion for summary judgment.  The defendants argue that the plaintiff's responses are untimely and should be stricken because they were filed one day after the deadline set by the court.  The defendants have not asserted that they have been prejudiced by the late filing of the plaintiff's responses, and thus, the defendants' motion to strike will be denied.

The plaintiff argues that the affidavits filed in support of the defendants' motion for summary judgment do not meet the requirements of  FED. R. CIV. P. 56,[4] and should be stricken. The court is capable of sifting through the defendants' affidavits and accompanying documentation and considering only those portions which are either based on the declarant's

---

[4]  FED. R. CIV. P. 56(c)(4) requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."

personal knowledge or are not being offered for the truth of the matter asserted.  To the extent that the declarations contain information not based on personal knowledge, the court has not considered that material in resolving the motion for summary judgment. Accordingly, the plaintiff's motions to strike will also be denied.

To the extent that the plaintiff seeks to have certain documents deemed authentic, *see* doc. # 79, the defendants have not objected.  Accordingly, this motion shall be granted to the extent that the court will deem the documents to be authentic for the purpose of considering the defendants' motion for summary judgment.

### B.  City of Phenix City

The plaintiff has sued the City of Phenix City alleging that it has a custom of permitting arrests without probable cause, and allowing unfounded criminal complaints to be routinely filed.  "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  Municipalities are usually not liable for the acts of their agents; however, a municipality may incur liability for the actions of a police officer when it promulgates an "official policy" that causes a constitutional violation.  *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691-94 (1978). To be successful on a claim against a municipality under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Dupree asserts in his complaint that the City of Phenix City failure to "take corrective action as concerns the carte blanche issuance of arrest warrants without regard to their legal correctness is a product of the City of Phenix City's failure to properly supervise and/or train the warrant clerk, policemen and others involved in the wholesale issuance of arrest warrants." (Doc. # 31 at 4). Asserting that something is a "unofficial" custom, without more, is simply insufficient to hold the municipality liable. (*Id*.). Courts in this district have repeatedly required more than a bare bones, passing reference to a policy or custom to state a claim against a municipality. *See, e.g.*, *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301–02 (M.D. Ala. 2009); *Manning v. Mason*, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing claim where plaintiffs failed to identify a specific policy or custom)' *Lowe v. Montgomery City, Ala.*, 2007 WL 1186596 (M.D. Ala. 2007) (vague and conclusory allegations are insufficient to support a claim under § 1983); *Walters v. City of Andalusia*, 89 F.Supp.2d 1266, 1277 (M.D. Ala. 2000) (single incident insufficient to demonstrate "longstanding and widespread practice"). Dupree points the court to no evidence other than his arrest to support his claim of a custom or policy of the City of Phenix City. Consequently, the court concludes that Dupree has failed to demonstrate that there exists a genuine dispute regarding any policy or custom related to the City of Phenix City's training and supervising of its officers, and thus, the City of Phenix City is entitled to judgment as a matter of law on his claims against it.

**C. Illegal Arrest and Seizure Claim against defendant Lashley**.

Dupree also sues defendant Lashley alleging that she arrested him and seized his shotgun without a warrant and in violation of the Fourth Amendment to the Constitution of the United States.   Defendant Lashley denies that her actions were improper under the circumstances and she asserts the defense of qualified immunity.   *See* Doc. # 73.

*1. Official Capacity Claims*.  To the extent that Dupree sues this defendant in her official capacity, he is entitled to no relief.  A suit against a party in her official capacity is the same as a suit against the governmental entity that the individual employee represents. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). As previously noted, governmental entities may be liable when the alleged constitutional violations resulted from the execution of the policy or custom of the governmental entity, *see Monell, supra,*  but Dupree has not come forward with any evidence that the City of Phenix City had a custom or policy which resulted in the wrongs asserted in the complaint. Thus, Lashley is entitled to summary judgment in her official capacity with regard to the plaintiff's unlawful arrest and seizure claims.

*2. Individual Capacity Claims*.  Defendant Lashley asserts that she is entitled to summary judgment on the plaintiff's unlawful arrest and seizure claims against her because Dupree has failed to demonstrate that she violated his Fourth Amendment rights.  She also alleges that she is entitled to qualified immunity.

The Fourth Amendment guarantees that persons will be secure in their persons against unreasonable searches and seizures.  "The Fourth Amendment is implicated when a police

officer either briefly detains a citizen for investigatory purposes or holds a citizen pursuant to an arrest. *United States v. Hastamorir,* 881 F.2d 1551, 1556 (11th Cir.1989)." *Bryan v. Spillman,* 217 Fed. Appx. 882, 884, (11th Cir. 2007) (No. 06-13970). "Personal encounters between law enforcement officers and citizens are 'seizures' on occasions "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."" *Courson v. McMillian*, 939 F.2d 1479, 1488 (11th Cir. 1991) *quoting Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Individuals have a constitutional right not to be arrested without probable cause, and a violation of this right may give rise to a claim for damages under 42 U.S.C. § 1983. *Von Stein v. Brescher,* 904 F.2d 572 (11th Cir. 1990). However, "[a]n arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

Lashley arrested Dupree for disorderly conduct. Under Alabama law, an officer may arrest an individual for disorderly conduct when the person:

(1)    Engages in fighting or in violent tumultuous or threatening behavior;
(2)    Makes unreasonable noise; or
(3)    In a public place uses abusive or obscene language or makes an obscene gesture; or
(4)    Without lawful authority, disturbs any lawful assembly or meeting of persons; or
(5)    Obstructs vehicular or pedestrian traffic, or a transportation facility; or
(6)    Congregates with other person (sic) in a public place and refuses to comply with a lawful order of the police to disperse.

ALA. CODE § 13A-11-7 (1977).

"The "abusive or obscene language" provision of the disorderly conduct statute "is

very narrow and applies only to 'fighting words.'" *R.I.T. v. State*, 675 So. 2d 97, 98 (Ala. Crim. App. 1995). *See also Robinson v. State*, 615 So. 2d 112, 113 (Ala. Crim. App. 1992).

> Unfortunately, epithets ... directed at a police officer in the performance of [her] duties are not uncommon in today's law enforcement environment.  The fact that an officer encounters such vulgarities with some frequency, and the fact that [her] training enables [her] to diffuse a potentially volatile situation without physical retaliation, however, means that words that might provoke a violent response from the average person do not, when addressed to a police officer, amount to 'fighting words.'

*Id*. at 114 *quoting Shinault v. City of Huntsville*, 579 So. 2d 696 (Ala. Crim. App. 1991) (Bown, J., dissenting).

Moreover, "[d]isorderly conduct is a Class C misdemeanor." ALA. CODE § 13A-11-7 (1977).  Alabama law prohibits a police officer from arresting a person for a misdemeanor without a warrant *unless* the offense has been committed in the officer's presence.[5] *See* ALA. CODE § 15-10-3 (emphasis added).

Dupree asserts that he did not curse, yell, utter racial epithets, or obscene language at any time during the encounter with Lashley.  Lashley contends that Dupree yelled, screamed, cursed and refused to lower his voice or calm down.   Lashley also reported that two witnesses *told her* that Dupree had been waving the shotgun and yelling racial epithets. Plainly, there are factual disputes concerning the incident between Dupree and Lashley, including whether Alabama law permitted Lashley to arrest Dupree for disorderly conduct

---

[5] There are certain exceptions to the general rule that misdemeanor arrests without a warrant require that the offense occur in the officer's presence.  *See* ALA. CODE 15-10-3.  None of the exceptions apply in this case.

under the circumstances.  Taking the plaintiff's version of the facts as true, as the court is required to do at this juncture, a reasonable jury could conclude that Lashley's arrest of Dupree was not permissible under Alabama law because his conduct did not rise to the level of disorderly conduct.  A reasonable jury could also conclude that Alabama law did not permit Lashley to arrest Dupree for the misdemeanor offense of disorderly conduct without a warrant because Dupree did not commit the offense in Lashley's presence.  A reasonable jury could conclude, therefore, that Lashley's arrest of Dupree was invalid and thereby violative of the Fourth Amendment.  Under the facts presented by the plaintiff, the court concludes that genuine disputes of material fact exist regarding whether Lashley had probable cause to arrest Dupree for disorderly conduct.  Thus, summary judgment is due to be denied.

Lashley further argues that she is entitled to qualified immunity for Dupree's claims against her.  The doctrine of qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "[Q]ualified immunity is a privilege that provides

14

'an immunity from suit rather than a mere defense to liability.'" *Bates v. Harvey*, 518 F.3d

1233, 1242 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).  For this

reason, the Supreme Court instructs courts to resolve "immunity questions at the earliest

possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *GJR Invs., Inc. v.*

*County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (Noting it is "important for a court

to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.").

District courts are no longer bound to follow the "inflexible" two-part inquiry for qualified

immunity that had been required by *Saucier, supra. Pearson*, 555 U.S. 227.  "The judges of

the district courts and the courts of appeals should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.  Under

*Saucier*, the court first asked a "threshold question: Taken in the light most favorable to the

party asserting the injury, do the facts alleged show the officer's conduct violated a

constitutional right?" 533 U.S. at 201.  If the answer to that question was affirmative, the

next question was  "whether the right was clearly established . . . in light of the specific

context of the case, not as a broad general proposition." *Id*.  The court may still apply the

two-part inquiry from *Saucier* when that "order of decision making will best facilitate the fair

and efficient disposition of [the] case." *Pearson*, 555 U.S. at 242.  However, lower courts

have the discretion to decide in which order to ask those questions.

　　　　Dupree clearly claims that he was unreasonably arrested, and his property seized, in

violation of the Fourth Amendment.  Thus, he has alleged a deprivation of his constitutional

rights.  It is clearly established that seizing and detaining an individual without reasonable

suspicion or probable cause violates the Fourth Amendment.  *See Anderson v. Creighton*, 483

U.S. 635 (1987); *Von Stein*, 904 F.2d at 579.  However, because factual disputes preclude

summary judgment on the merits of the case, the nature of the factual disputes also preclude

summary judgment on the question of qualified immunity.  If the facts are as Dupree alleges,

Lashley would not be entitled to immunity because any police officer would know that the

law was clearly established that arresting Dupree for disorderly conduct under the facts of

this case would violate his constitutional rights and any officer would know or conclude that

his or her actions were therefore unlawful. *See Duncan v. State*, 686 So. 2d 1279. 1282 (Ala.

Crim. App. 1996) ("Regarding the cursing, the appellant's saying "fuck you" to the officer

were not fighting words so as to constitute disorderly conduct in this case."); *R.I.T.*, 675 So.

2d at  99-100 (use of profanity or vulgarity directed at police officer does not constitute

"fighting words" to support arrest for disorderly conduct); *Robinson*, 615 So. 2d at 113-14

(language used by defendant did not constitute "fighting words" and arrest was unlawful).

Based on the forgoing, the court concludes that the motion for summary judgment with

respect to the Fourth Amendment claims against defendant Lashley is due to be denied.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that defendant

City of Phenix City's motion for summary judgment (doc. # 72) be GRANTED, and that this

defendant be DISMISSED as defendant in this action.  It is also the RECOMMENDATION of the Magistrate Judge that defendant Lashley's motion for summary judgment regarding Dupree's Fourth Amendment claims against her in her individual capacity (doc. # 72) be DENIED, and that this case be set for a non-jury trial.  Finally, it is

ORDERED as follows:

1.      That the motions to strike (docs. # 80, 81 & 83) be and are hereby DENIED;

2.      That the plaintiff's motion for order (doc. # 79) be and is hereby GRANTED to the extent that the documents are authenticated for the purpose of the defendants' motion for summary judgment.  The motion be and is hereby DENIED in all other respects; and

3.      That the parties shall file any objections to the said Recommendation on or before **July 16, 2012.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*.  See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of July, 2012.

_____/s/Charles S.  Coody_____
CHARLES S.  COODY
UNITED STATES MAGISTRATE JUDGE

18